UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE MILES, SR., | No. 2:21-cv-0989 KJM AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| ANNE MARIE SCHUBERT, et al., | |
| Defendants. | |

Plaintiff is a state inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). For the reasons stated below, plaintiff's motion to proceed in forma pauperis will be granted.

I.  APPLICATION TO PROCEED IN FORMA PAUPERIS

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments

1

of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II.   SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (brackets added); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (brackets added) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a

cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).  "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'"  Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (brackets added) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, see, e.g., Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, see Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

    III.   THE COMPLAINT

This action arises from criminal proceedings initiated against plaintiff in the Sacramento County Superior Court following a May 2016 incident at California State Prison, Sacramento ("CSP-Sac").  Plaintiff names the following as defendants: (1) District Attorney Anne Marie Schubert, (2) Deputy District Attorney Amanda Sanchez, (3) Sheriff Deputy Facility Jail Commander Luke, (4) Sergeant Sheriff Deputy Maxwell, (5) Lt. Sheriff Deputy Noble, (6) Lt. Sheriff Deputy Fisher, (7) Deputy Sheriff McClany, (8) Public Defender Alexander C. Asterlin, (9) Public Defender Etten Jeremiah, and (10) Psychiatrist Eugene P. Roeder, Ph.D.

Plaintiff claims that in May 2016 he sustained serious injuries after he was assaulted by non-party CSP-Sac Correctional Officer Daniel Garland.  Officer Garland "and his colleagues" then fabricated a report charging plaintiff with battering an officer.  As a result of the fabricated report, plaintiff was transferred to Sacramento County Jail to face criminal charges.[1]

---

[1] Plaintiff is now housed at Twin Towers Correctional Facility in Los Angeles, California.

Plaintiff alleges that District Attorney Anne Marie Schubert and Deputy District Attorney Amanda Sanchez conspired with CSP-Sac correctional staff, the Sacramento County Sheriff's Department, and the Sacramento County public defenders to "kidnap" plaintiff and hold him "hostage" for six years at the Sacramento County Jail.  Compl. (ECF No. 1 at 16).  According to plaintiff, the defendants knew the May 2016 incident report was fabricated because Officer Garland had repeatedly been found to use excessive force against inmates.  In addition, surveillance video of the incident would have exonerated plaintiff, but these defendants "intentionally 'destroyed and lost' " it in furtherance of the conspiracy.

Plaintiff further alleges that his court-appointed public defender, Etten Jeremiah, conspired with Dr. Roeder, a psychiatrist at Atascadero State Hospital, to violate his rights.  As to this conspiracy, Jeremiah informed the trial court in 2019 that he believed plaintiff was mentally incompetent to stand trial.  Compl. (ECF No. 1 at 8).  The trial court subsequently ordered plaintiff involuntarily committed to Atascadero State Hospital where Dr. Roeder is alleged to have forcibly medicated plaintiff with psychotropic medication for eight months.  Plaintiff feels that "an unjustified illegal 1368" was used to further keep him "in this corrupted system." Compl. (ECF No. 1 at 8).  In December 2020, plaintiff was appointed another public defender, Alexander Asterlin.  Id.  Plaintiff claims Asterlin failed to seek information from the prosecutor's office about impropriety at CSP-Sac and about Officer Garland.

Aside from the above, plaintiff alleges in conclusory terms that Facility Commander Luke failed to train his subordinates to not violate plaintiff's rights, failed to prevent knowing violations of those rights, and generally disregarded the law.  Allegedly, a letter mailed to plaintiff from the State Bar of California — "confidential legal mail," according to plaintiff — was opened and read outside of his presence by jail staff.  Plaintiff complained to the mailroom supervisor, Deputy Sheriff McClany, who responded, "Jail mail is subject to examination." Compl., attach. (ECF No. 1 at 12).  Plaintiff filed an inmate grievance regarding this issue, but it was denied by Sergeant Sheriff Deputy Maxwell, Lt. Sheriff Deputy Noble, and Lt. Sheriff Deputy Fisher after they concluded that "correspondence directly from The State Bar of California does not constitute legal mail." Id. (ECF No. 1 at 15).

IV. ANALYSIS

    A. Legal Mail

Plaintiff alleges that Facility Commander Luke is liable for his subordinates' opening of a letter from the State Bar of California, and that Deputy Sheriff McClany, Sergeant Sheriff Deputy Maxwell, Lt. Sheriff Deputy Noble, and Lt. Sheriff Deputy Fisher all failed to properly address the issue when plaintiff raised it.

While prisoners have "a First Amendment right to send and receive mail," Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam), a prison may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests," Turner v. Safley, 482 U.S. 78, 89 (1987).

Confidential correspondence between a prisoner and his attorney is protected by the Sixth Amendment. See Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) ("What prison officials don't have the right to do is read a confidential letter from an inmate to his lawyer."). Additionally, the Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). This protection, however, does not extend to correspondence with government agencies. O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir. 1996) (upholding prison policy including reviewing inmate correspondence with government officials, stating "Regulating correspondence between prisoners and government agencies can serve to prevent criminal activity and maintain prison security"); Hamilton v. Department of Corrections, 43 F. App'x 107 (9th Cir. 2002) (unreported) ("Although Hamilton may have a right to correspond confidentially with an FBI agent under California law, see Cal. Code Regs. tit. 15, § 3141(a) & (c)(2) (inmates may correspond confidentially with federal officials appointed by the President of the United States, and their staff members), no such federal constitutional right exists"); Grigsby v. Horel, 2008 WL 11422633, at *2 (N.D. Cal., Apr. 28, 2008); aff'd 341 F. App'x 314 (9th Cir. 2009) ("The cited incoming mail from the Commission on Judicial Performance, Del Norte County Superior Court and the State Bar of California is not material because it was not 'legal mail.' "); Williams v. Simon, 2018 WL 1585785, at *4 (D. Or. Mar. 30,

2018) ("A prison need not treat all mail sent to government officials as legal mail.").

Plaintiff's claims against Luke, McClany, Maxwell, Noble, and Fisher are premised on the jail staff's opening of a letter from a bar organization, not mail from an attorney. Because First Amendment protections do not extend to letters from government agencies, plaintiff fails to state a claim against any of these defendants.

B.     Prosecutors Are Entitled to Immunity

Plaintiff's claims against District Attorney Anne Marie Schubert and Deputy District Attorney Amanda Sanchez are premised on acts that they performed as prosecutors. However, prosecutors enjoy immunity from suits when they act within the scope of their prosecutorial duties. Imbler v. Pachtman, 424 U.S. 409, 420 (1976). The common-law immunity of a prosecutor stems from concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his [or her] public duties...." Id. Plaintiff's claims arise from the prosecutors' charging decision and related conduct. Because plaintiff attempts to impose liability for acts taken in these defendants' prosecutorial capacity, the complaint is subject to dismissal as against them.

C.     Public Defenders Are Not State Actors

Plaintiff also names two public defenders who represented him in the underlying criminal case: Alexander C. Asterlin and Etten Jeremiah. He alleges that they violated his constitutional rights by failing to adequately represent him. But when public defenders are acting in their role of advocate, they are not acting under the color of state, or federal, law for purposes of a § 1983 or a Bivens action. See Georgia v. McCollum, 5050 U.S. 42, 53 (1992); Polk County v. Dodson, 454 U.S. 312, 320-25 (9th Cir. 2003) (en banc). The United States Supreme Court has concluded that public defenders do not act under color of state law because their conduct as legal advocates is controlled by professional standards independent of the administrative direction of s state supervisor. Vermont v. Brillon, 556 U.S. 81, 91 (2009). Accordingly, plaintiff may not bring an action under § 1983 against Asterlin and Jeremiah for their respective roles in connection with defending him on the battery charge.

////

D.  Forced Administration of Medication

Plaintiff next accuses Dr. Roeder of forcibly medicating him for eight months at Atascadero State Hospital. As explained below, this claim is also subject to dismissal.

The Supreme Court has recognized a liberty interest in freedom from the administration of unwanted antipsychotic drugs. Washington v. Harper, 494 U.S. 210, 221-22 (1990); United States v. Ruiz-Gaxiola, 623 F.3d 684, 691 (9th Cir. 2010). For convicted prisoners, or those awaiting trial, the "liberty interest in avoiding unwanted medication must be defined in the context of the inmate's confinement." United States v. Loughner, 672 F.3d 731, 745 (9th Cir. 2012) (quoting Harper, 494 U.S. at 222). If it is determined that a prisoner is a danger to himself or others, and treatment is in his medical interest, the Due Process Clause allows the State to treat an inmate with serious mental illness with antipsychotic drugs against his will. Harper, 494 U.S. at 227; cf. Riggins v. Nevada, 504 U.S. 127, 135 (1992) ("forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness.").

To comport with due process, the government must show both the need for, and medical appropriateness of, antipsychotic medication. Riggins, 504 U.S. at 135 (recognizing that due process would have been satisfied had the State shown, and the federal court found, that the forced medication was "medically appropriate," and "considering less intrusive alternatives, essential for the [detainee's] safety or the safety of others."). In the context of Harper and Riggins, an invasion of the human person can only be justified by a determination by a neutral factfinder that the antipsychotic drugs are medically appropriate and that the circumstances justify their application. See Kulas v. Valdez, 159 F.3d 453, 455-56 (9th Cir. 1998).

In addition to the substantive requirements above, the administration of antipsychotic drugs "cannot withstand challenge if there are no procedural safeguards to ensure the prisoner's interests are taken into account." Harper, 494 U.S. at 233. A prisoner must be given notice and the right to be present at and participate in a hearing. See Kulas, 159 F.3d at 456. But these procedural safeguards may not apply in an emergency situation where the prisoner poses an imminent and serious danger to himself or others. See id. (distinguishing plaintiff's case from one

7

where officials could demonstrate a prisoner "posed such an imminent and serious danger to himself or others that the minimal procedural requirements of Harper—notice and the right to be present at and participate in a hearing—could not be met").

Plaintiff's allegations as to Dr. Roeder do not state a claim because he concedes that he was involuntarily committed pursuant to California Penal Code § 1368. As it pertains to plaintiff's allegations, section 1368 provides:

> (a) If, during the pendency of an action and prior to judgment, . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel. . . .
>
> (b) If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. . . .

Cal. Penal Code § 1368(a)-(b). Sections 1368.1 and 1369, in turn, set forth the procedures to determine the defendant's mental competence, which includes notice, a hearing, and the presentation of evidence.

A finding of incompetency means that the defendant may be committed to an institute for psychiatric treatment. Cal. Penal Code § 1370(a)(1)(B)(i). Regarding the administration of antipsychotic medication, "[t]he court shall hear and determine whether the defendant lacks capacity to make decisions regarding" it. Id. § 1370(a)(2)(B). If a court issues an order for involuntary medication, the institute is directed to make a written report to the court within 90 days after commitment "concerning the defendant's progress toward recovery of mental incompetence and whether the administration of antipsychotic medication remains necessary." Id. § 1370(b)(1). A court order for involuntary medication remains valid for one year but may be renewed on a petition for renewal. Id. § 1370(a)(7)(A)-(B).

Considering this statutory authority, pursuant to which plaintiff admits he was committed to Atascadero State Hospital, plaintiff was involuntarily administered psychotropic medication following the provision of notice, his presence at the hearing, and the opportunity to present evidence. Plaintiff does not allege that these procedural requirements were not met or that Dr.

8

Roeder failed to comply with state law regarding the continued administration of antipsychotic medication. Plaintiff alleges only that the "1368" was "unjustified" and "illegal" because correctional officers utilize these hearings to keep inmates incarcerated "in this corrupted system longer." Compl. (ECF No. 1 at 8). These allegations do not state a claim against Dr. Roeder.

### E.   Conspiracy

Lastly, plaintiff claims that the defendants have conspired to violate his constitutional rights. To state a claim for conspiracy under § 1983, plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). " 'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.' " Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989)). Additionally, plaintiff must show that defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff fails to state a claim for conspiracy because he has not shown that he suffered an actual deprivation of his constitutional rights, as discussed above. Furthermore, he fails to assert sufficient allegations to demonstrate the existence of an agreement or meeting of the minds between the defendants.

### V.   NO LEAVE TO AMEND

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

The undersigned finds that, as set forth above, the complaint fails to state a claim upon

which relief may be granted. Given the facts provided by plaintiff, it does not appear that further amendment would result in a cognizable claim. As a result, leave to amend would be futile and the complaint should be dismissed without leave to amend.

### VI. PLAIN LANGUAGE SUMMARY FOR A PRO SE LITIGANT

Your request to proceed in forma pauperis is granted, and you are not required to pay the entire filing fee immediately.

It is being recommended that your complaint be dismissed without leave to amend because none of your allegations state a cognizable claim and cannot be amended to correct the deficiencies identified above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's requests for leave to proceed in forma pauperis (ECF Nos. 2, 8) are GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Sheriff of Los Angeles County filed concurrently herewith.

IT IS FURTHER RECOMMENDED that the complaint be dismissed without leave to amend for failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judges Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 23, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE